UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LU MITCHELL, | ) | CASE NO. 1:12cv2507 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| DILLARD DEPARTMENT STORES, INC., et al, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Lu Mitchell ("plaintiff") filed this action under 42 U.S.C. § 1981 against Dillard Department Stores, Inc. ("Dillard's"), and the City of Westlake ("Westlake") (collectively, "defendants"). She also asserts state law tort claims for false imprisonment, theft, and defamation *per se*. In the complaint, plaintiff alleges she was falsely accused of theft on the basis of her race. She seeks monetary damages.

Plaintiff also filed an application to proceed *in forma pauperis*. That application is **GRANTED**.

I. BACKGROUND

The following is a summary of relevant allegations made by plaintiff in her complaint. On September 18, 2008, plaintiff, an African-American female, was shopping at the Dillard's store in Beachwood, Ohio. (Doc. No. 1 at ¶ 7.) Plaintiff had previously purchased a dress in the wrong size and brought it back to the store to exchange it for one that fit properly. (Doc. No. 1 at ¶¶ 9–10.) She was able to locate an identical dress in the size she desired and

spoke with Dillard's employees about effecting the return. (Doc. No. 1 at ¶ 8–9.) Sales associate Jackie Hanna advised plaintiff she would have to return the ill-fitting dress at the Customer Service Counter and then return to the sales counter to purchase the second dress. (Doc. No. 1 at ¶ 9.) Ms. Hanna offered to hold the desired dress at her counter while plaintiff went to return the first dress. (Doc. No. 1 at ¶ 9.)

After plaintiff made the return, she went back to the sales counter, where a different sales associate had replaced Ms. Hanna. (Doc. No. 1 at ¶ 10–11.) That associate (name unknown) told plaintiff she knew nothing about the dress that Ms. Hanna was to have been holding for plaintiff until she completed her return at the Customer Service Department. (Doc. No. 1 at ¶ 11.) The associate retrieved Ms. Hanna, who told plaintiff that she had allowed a third sales associate to take the dress back to its original department. (Doc. No. 1 at ¶ 11.)

At this point, a Dillard's supervisor approached the counter and entered the discussion. (Doc. No. 1 at ¶ 14.) Plaintiff and the supervisor looked for the dress near the counter but could not locate it. (Doc. No. 1 at ¶ 14.) The supervisor also indicated that she would "speak to her employees about their lack of customer service towards Plaintiff." (Doc. No. 1 at ¶ 14.) Although none of the Dillard's employees gave any indication that they suspected plaintiff had stolen the dress, they reported a theft to the Beachwood Police Department after plaintiff left the store. (Doc. No. 1 at ¶ 17–19.) As a result of the report, on September 28, 2008, Patrolman Michael Acker of the Beachwood Police Department filed a theft complaint against plaintiff, and a warrant was issued. (Doc. No. 1 at ¶ 19–20.)

On August 13, 2010, plaintiff was arrested by Westlake Police after a routine traffic stop revealed the outstanding warrant. (Doc. No. 1 at ¶ 20–21.) While at the police station, Westlake Police Officer Justin Hughes stole money from plaintiff, including a one hundred

dollar bill. (Doc. No. 1 at ¶ 22.) She demanded that Westlake reimburse her for the missing funds but they refused to do so. (Doc. No. 1 at ¶ 22.) The theft charge against plaintiff was dismissed on October 5, 2011. (Doc. No. 1 at ¶ 21.)

Plaintiff claims defendants' actions were racially motivated. (Doc. No. 1 at ¶ 23.) She contends that Dillard's discriminates against African-American shoppers and that Westlake refuses to return her money due to her race. She asserts four causes of action. Her first claim asserts a violation 42 U.S.C. § 1981 against both defendants. Next, she claims Westlake is liable to her for false imprisonment and theft.[1] Finally, Plaintiff asserts Dillard's is liable to her for defamation *per se*. She seeks monetary damages.

## II. STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A cause of action fails to state a claim upon which relief may be granted when the complaint lacks "plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level, on the assumption that all the allegations in the complaint

are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff.

### III. ANALYSIS

#### A.     42 U.S.C. § 1981

Plaintiff first claims Dillard's "engaged in a pattern or practice of arresting or detaining African American shoppers at a significantly greater rate than it arrests or detains white shoppers" in violation of 42 U.S.C. § 1981. (Doc. No. 1 at ¶ 26.) This statute prohibits racial discrimination in the making and enforcement of private contracts. It applies to all incidents of the contractual relationship, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *See* 42 U.S.C. § 1981(b). While most litigation involving § 1981 arises from the right to make and enforce employment contracts, courts, including the Sixth Circuit, have applied the contracts clause of § 1981 to situations involving retail establishments. *See, e.g.*, *Christian v. Wal-Mart Stores*, 252 F.3d 862 (6th Cir. 2001); *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001).

In a § 1981 commercial establishment case, a plaintiff must prove:

---

[1] These two causes of action are grouped together as "Count II" of plaintiff's complaint.

>(1) she is a member of a protected class;
>
>(2) she sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
>(3) she was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) she was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian*, 252 F.3d at 872. In *Christian*, an African-American plaintiff testified that she was watched, followed, and excessively offered assistance by a Wal-Mart sales associate, and that she was falsely accused of shoplifting an item later found on the shelf. *Id.* at 864–66. Christian alleged the sales associate believed she was more likely to be attempting to shoplift merchandise because of her race. *Id.* at 864. The Sixth Circuit applied the three-part test listed above and reversed the district court's grant of judgment as a matter of law to Wal-Mart on the plaintiff's § 1981 claim. *Id.* at 879–80.

Similarly, plaintiff, a member of a protected class, asserts Dillard's employees believed her more likely to have taken the dress based on her race. She alleges that when she went to return the first dress, the second dress, which was to be held for her to purchase, disappeared with a sales associate, leaving plaintiff unable to make the purchase. She claims Dillard employees assumed she had stolen it and after she left the store, called the police to report the crime. These allegations, taken as true, are sufficient to state a *prima facie* claim for relief against Dillard under 42 U.S.C. § 1981.

Plaintiff's claims against Westlake under this statute, however, are without merit. She alleges Westlake police arrested her on the outstanding warrant. Westlake was not involved in the retail business, and did not refuse to enter into a contract with the plaintiff on the basis of

her race. Although plaintiff claims a Westlake employee stole money from her, this conduct does not fall within the parameters of 42 U.S.C. § 1981. Accordingly, plaintiffs § 1981 claim against Westlake must be dismissed.

      B.      **False Imprisonment**

In Count II of her complaint, plaintiff asserts tort claims for false imprisonment and theft. Under Ohio law, to set forth a cause of action for false imprisonment, plaintiff must show that the defendant intentionally confined her within a limited area, for any appreciable time, against her will and without lawful justification. *Logsdon v. Hains*, 492 F.3d 334, 347 (6th Cir. 2007); *Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010). Plaintiff does not allege that Dillard's confined her when she visited the store. In fact, she alleges she was totally unaware that Dillard's suspected she had stolen the missing dress and that she left the store without incident. Because confinement by the defendant is an element of this cause of action, plaintiff fails to state a claim against Dillard's for false imprisonment.

Westlake did detain plaintiff, but the imprisonment was not unlawful. There is no "guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). A claim for false imprisonment requires plaintiff to allege she was "arrested without legal process, or under a void process." *Norwell v. Cincinnati*, 133 Ohio App. 3d 790, 810 (1999) (citing *Rogers v. Barbera*, 170 Ohio St. 241, 243–44 (1960)). An arrest warrant issued by a court defeats a claim for false arrest or imprisonment unless the warrant is "utterly void." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). In this case, Westlake was acting pursuant to an outstanding warrant for plaintiff's arrest issued two years earlier by Beachwood. The fact that the charges against plaintiff were later dropped does not make her arrest and detention unlawful.

Because she does not allege the requisite elements of false imprisonment against either defendant, those claims must also be dismissed.

### C. Theft

Plaintiff's claim against Westlake for the alleged theft by its employee is also without merit. The intentional tort of conversion covers theft of property. In order for an employer to be liable under the doctrine of *respondeat superior* for the actions of its employee, the tort of the employee must be committed within the scope of employment. Where the tort is intentional, as is the case here, the behavior giving rise to the tort must be "calculated to facilitate or promote the business for which the servant was employed." *Byrd v. Faber*, 57 Ohio St. 3d 56, 58–59 (Ohio 1991). In other words, an employer is not liable for independent, self-serving acts of its employees that in no way facilitate or promote the employer's business. In this case, plaintiff claims a Westlake police officer took a one hundred dollar bill from her personal effects when she was booked into the jail. Stealing money does not promote the business of Westlake. Westlake cannot be held liable under the doctrine of *respondeat superior* for an intentional tort committed by its officer.

### D. Defamation

Finally, plaintiff asserts a defamation claim against Dillard's. As defined by Ohio tort law, defamation is a "false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business." *Sweitzer v. Outlet Commc'ns., Inc.*, 133 Ohio App. 3d 102, 108 (1999). To state a *prima facie* claim for defamation, plaintiff must plead: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement

irrespective of special harm or the existence of special harm caused by the publication. *Mawaldi v. St. Elizabeth Health Ctr.*, 381 F. Supp. 2d 675, 688 (N.D. Ohio 2005); *Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849 (N.D. Ohio 2003).

To satisfy the first element, plaintiff claims Dillard's employees accused her of theft. She alleges the employees summoned the Beachwood Police Department to the store on September 18, 2008, and caused an arrest warrant to be issued against her. She contends there was no evidence that she had committed a theft, and, therefore, the communication was false. To satisfy the first element of the cause of action, the statement must not only be false, but also defamatory. *See Mawaldi*, 381 F. Supp. 2d at 688. Defamation falls into two categories: defamation *per quod* and defamation *per se*. *See McCartney v. Oblates of St. Francis deSales*, 80 Ohio App. 3d 345, 353 (1992). In defamation *per quod*, a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove damages. *See Kendel v. Local 17-A United Food & Commercial Workers*, 835 F. Supp. 2d 421, 433 (N.D. Ohio 2011). Defamation *per se* occurs if a statement, on its face, is defamatory. *See id*.

In order to be actionable as defamation *per se*, the allegedly defamatory statement must fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) the words tend to subject a person to public hatred, ridicule, or contempt. *See Id*. Theft is an indictable offense involving moral turpitude. An accusation of theft, such as the one in this case, would fit within the first class of *per se* defamatory statements.

The second element that plaintiff must satisfy is that the false and defamatory statement was an unprivileged publication to a third party. Even if a court determines that a

statement is defamatory, not all defamatory statements are actionable. *Nehls v. Hillsdale Coll.*, 178 F. Supp. 2d 771, 779-80 (E.D. Mich. 2001). A publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of [the defendant's] own affairs, in matters where his interest is concerned." *Hahn v. Kotten*, 43 Ohio St. 2d 237, 243 (1975). The defendant may have a "qualified" or "conditional" privilege if the interest that the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose. *Id.* at 244. "A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Id.* Frequently, in such cases, there is a legal, as well as a moral, obligation to communicate the statement.

> Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and actual malice essential to the right of recovery. A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Id.* The essential elements of qualified privilege are: (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. *Id.*

The existence of a qualified privilege has been recognized in cases involving defamatory statements made during the course of criminal or governmental investigations. *See Black v. Cleveland Police Dep't.*, 96 Ohio App. 3d 84, 89 (1994); *Atkinson v. Stop-N-Go Foods, Inc.*, 83 Ohio App. 3d 132, 136 (1992). Statements made in the course of criminal investigations are not, however, protected by the qualified privilege when "clear and convincing evidence

show[s] that the communication was made with actual malice." *Id*. at 89 (quoting *Jacobs v. Frank*, 60 Ohio St. 3d 111 (1991). Actual malice requires "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id*. at 89–90.

In this case, plaintiff alleges Dillard's employees telephoned police and reported that plaintiff stole the dress. Thereafter, a warrant was issued for her arrest. Even if the Court accepts as true plaintiff's allegation that the statement to the police contained false information about her and that this information was defamatory *per se*, she does not allege facts to suggest the employees were acting in bad faith, or with a reckless disregard for the truth. The dress that plaintiff left at the checkout counter disappeared. Plaintiff alleges no facts that indicate that Dillard's knew that plaintiff had not stolen the dress but reported it stolen nonetheless. In fact, plaintiff states that defendant *did not* "acknowledge[] the fact that all the items in Plaintiff's possession had been purchased and that none of the items had been stolen." (Doc. No. 1 at 5.) Quite simply, the facts alleged show that Dillard's may have suspected plaintiff of stealing the disappeared dress. Though Dillard's did not expressly accuse plaintiff of theft while plaintiff was in the store, no facts are alleged that Dillard's ever knew or believed that plaintiff did not commit said theft. As alleged by plaintiff, the theft report was not made with knowledge of or reckless disregard for its falsity and was thus subject to the qualified privilege. Plaintiff has not stated a claim for defamation against Dillard's.

## IV. CONCLUSION

For all the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is **GRANTED**. Her defamation, theft, and false imprisonment claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e). Her claim under 42 U.S.C. § 1981 against Westlake is also **DISMISSED**. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this

decision could not be taken in good faith.[1] This action shall proceed solely on plaintiff's claim under 42 U.S.C. § 1981 against Dillard's. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon Dillard Department Stores, Inc.

**IT IS SO ORDERED**.

Dated: October 1, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[1] 28 U.S.C. § 1915(a)(3) provides, in pertinent part, "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."